## J. M. DANIELS *vs.* DAVID MOWRY, *et al.*

The third section of the act concerning mortgages limits the right to redeem, to three years " next after the mortgagee or other person claiming under him shall, by process of law or by peaceable and open entry, made in the presence of two witnesses, have taken actual possession of such mortgaged estate and continued the same during said term."— Where after surrender of possession to the mortgagee, pursuant to the statute, the owner of the equity of redemption made an absolute conveyance of a portion of the mortgaged premises, the Court held that this conveyance was not such a disseizin or interruption of the possession under the satute, as would give a right to redeem after three years from the commencement of the possession.

The three years possession under the statute, in order to operate a foreclosure, must be accompanied throughout by a right on the part of the mortgagor to redeem and to prefer a bill for that purpose.

Eight days before the lapse of the three years possession under the statute, the owner of the mortgage agreed with the owner of the equity of redemption, for themselves and all claiming under them, in consideration that no bill in equity should be filed to redeem, that the right to redeem should be continued for one year from the 7th of May, 1838 ; and on his part, the owner of the equity agreed, that during said year no bill should be filed to redeem, and that on the 7th of May, 1839, the principal and compound interest, on the amount secured by the mortgage, including expenses, &c., should be paid to the owner of the mortgage, or, in default thereof, said right in equity should be foreclosed. Before the year elapsed, a bill to redeem was preferred—*held*

That a contract to forbear to prefer a bill to redeem for a limited time, is valid, though not under seal.

That the contract to forbear to prefer a bill to redeem, as stated above, must be restricted to the eight days during which the right to prefer a bill remained.

That the stipulation not to prefer a bill to redeem during the year, and at the end of the year to be foreclosed, unless the sums stipulated were paid, was void, or at least, voidable.

That the agreement carried the right to redeem, not only over the year, but protracted it indefinitely.

If by an agreement to postpone the day of foreclosure, the power or right to redeem be interrupted, the mortgagee will be put to a new entry in order to foreclose.

That though the stipulation not to redeem during the year was void or voidable, yet, the other stipulations of the contract were valid, and that the owner of the equity of redemption, in order to entitle him to maintain his bill, should pay the amounts agreed upon in said contract.

It is the intent of parties that taints a contract with usury, and not the mere words in which that contract is expressed.

J. WHIPPLE and D. DANIELS, for plaintiff.

R. W. GREENE, and S. Y. ATWELL, for defendants

DURFEE, C. J.—This is a bill to redeem one seventh part of an undivided estate in Smithfield, called the Branch Factory estate. William H. Passmore, one of the heirs of Comstock Passmore, on the 19th of July, 1830, in order to secure the payment of one thousand dollars, mortgaged the said seventh part to Joseph Almy. Almy, on the 16th of June, 1834, assigned this mortgage

to Seth Mowry, Jr., who held until February 6, 1839, and then assigned it to David Mowry, who, together with Fenner Mowry, a subsequent. assignee, defends against this bill.

The equity of redemption in the mortgaged property passed by several assignments, which for the purposes of this opinion it is not necessary to specify, from William H. Passmore to Daniel Jenks, to whom it was assigned November 6, 1834. On the second of May, 1835, Jenks surrendered, pursuant to the statute, the mortgaged property, condition having been then long since broken, to Seth Mowry, Jr., the aforesaid assignee of Almy.— On the third of June following, Jenks assigned the equity of redemption to David Daniels and J. E. Arnold.— On July. 30, of the same year, Arnold assigned to said Daniels, who thereupon, became solely entitled to the equity of redemption. August 13th, D. Daniels, with the said Seth Mowry, Jr., in a written instrument of that date, agreed, for himself, his heirs, executors and assigns, with the said Seth, his heirs, &c., that he, the said Seth, was in possession of the mortgaged property ; and further agreed, that, if the said Seth allowed him to receive the rents and profits of the same, he would pay him the said Seth, both the principal and interest on said mortgage, without any claim for rents and profits, and that he would pay the interest annually on said mortgage, as the same should become due, reckoning from the time said possession commenced.

This instrument is signed and sealed by D. Daniels.

May 2, 1837, D. Daniels conveyed to John M. Daniels, complainant, one acre and one hundred and thirty-two rods of land, being a part of the said Passmore estate, yet undivided and mortgaged as aforesaid. On the 12th

of May, 1838, he transferred to the same J. M. Daniels another part of the same estate, estimated to contain about twenty acres. March 23, 1838, the said D. Daniels, being seized as stated in the bill, and not denied in the answer, of the whole Branch Factory estate, (excepting the grants to J. M. Daniels, aforesaid,) subject to the mortgage of the one seventh part thereof, assigned all his interest in the same to J. D. Brown, in trust for the payment of debts ; leaving him, the said David Daniels, only a possible resulting interest after the fulfilment of the trust.

On the 24th of April, following, David Daniels and Seth Mowry, Jr., who had not yet assigned said mortgage, entered into certain stipulations and agreements, a memorandum of which, has been produced. This memorandum, after recognizing said Mowry as mortgagee in possession, and referring to the certificate of surrender on record, by book and page, thus proceeds :— " Now, the said Seth Mowry, doth agree for himself, his heirs, executors and assigns, in consideration that no bill in equity is filed to redeem said estate, that the right in equity to redeem said property, may be and is continued for one year, from the 7th day of May next, and this agreement the said Seth makes to and with the said Daniels, for the use and benefit of such person or persons as are or may be interested in said right in equity, and upon the express understanding, that at the expiration of said year, viz : on the 7th of May, 1839, the principal and compound interest, on the amount secured by said mortgage, including expenses, and without any deduction or claim for rents and profits, as the said Seth hath received none, shall be paid. And the said David Daniels, for himself, his assignee, and all who might or

may claim the benefit of this agreement, doth agree, that during said year, no bill shall be filed to redeem said mortgage, and that on said last mentioned day, said principal and compound interest and expenses shall be paid to said Seth or his legal representatives, or, in default of payment, said right in equity shall be foreclosed."

This memorandum is signed by Mowry and Daniels, without seal, and was filed April 26, 1838, in the office of the town clerk of the town of Smithfield.

It appears that this agreement was concluded only eight days before the expiration of the three years from the date of the surrender. No bill during that time was filed, and the property, for aught that appears, continued unchanged in occupancy or ownership, until February 4, 1839. On that day, J. M. Brown, the assignee of D. Daniels, released and quit-claimed to J. M. Daniels, complainant, all the right, title and interest in the Branch Factory estate, which had been conveyed to him by the before mentioned deed of David Daniels. There were other subsequent transfers, both of the mortgage and mortgaged premises, which has brought new parties into the bill. But it is not now necessary to name them.

April 30, 1839, J. M. Daniels filed this bill, and the question now to be determined is, whether, under the circumstances and facts as above set forth, the complainants have a right to redeem.

The counsel for the bill insist, in argument, on the absolute conveyance to J. M. Daniels, of May 2, 1837, of the acre and one hundred and thirty rods, as a disseizin of the mortgagee, and as an interruption of his actual possession of the mortgaged premises, under the statute, and thence infer the right to redeem. But in-

dependently of the evil consequences which would re-
sult to all parties from thus placing it in the power of
the mortgagor, or other tenant, to defeat a foreclosure,
the fact, that J. M. Daniels must have known, and con-
sequently been a party to, the wrong, in accepting the
transfer, cancels all claim to redeem on that ground ; for
though through error and misapprehension of right, the
complainant may do that which shall work a positive
wrong to the respondent, yet, if it be such wrong as the
Court may remedy by its decree, it may not operate
the dismissal of the bill ; he may be made to do equity ;
but, if the wrong be fundamental to the bill itself—as
if without it, he would have no·right to file the bill—in
such case the injury would be irreparable by the Court,
and to allow him to proceed, would be to make his own
injustice a foundation for the assertion and support of his
claim.

In my opinion, the decision of the question of the right
to redeem, must turn wholly on the construction and
legal effect of the agreement of April 24, 1838, the
memorandum of which has already been substantially
recited.

And as to that agreement, the first question is, who
are the contracting parties and what were their rights
and interests ? If both were parties, who had an in-
terest in the foreclosure and redemption of the estate,
their acts will bind all subsequent parties claiming
through them, who had notice, or who, using ordinary
diligence, might have had a knowledge of the transac-
tion.

One of the contracting parties was Seth Mowry, Jr.,
through whom the respondent claims. He was at the

time the owner of the mortgage and in possession of the mortgaged premises, under the surrender of May 2d, 1835. His right, therefore, to make all legal contracts, with reference to the possession and redemption, is unquestionable. David Daniels was the other ostensible party, but in Daniels there was nothing but a possible resulting interest, with which he had not and for aught that appears, has not parted. He had transferred to J. M. Brown, in trust for the benefit of his creditors, and the rights of Brown were not represented in the resulting interest of D. Daniels. Yet, had Daniels such an interest in the trust estate, and in the faithful performance of the trust, as might justify, if not require his agency on the part of the trustee, in order to realize out of the estate the greatest possible amount for the payment of his debts. We accordingly find in the memorandum referred to, that he is contracted with as an agent of this description. The said Seth Mowry makes the agreement to and with the said Daniels, for the use and benefit of such person or persons as are or may be interested in such right in equity, and Daniels contracts, " for himself, his assignee, and all who might or may claim the benefit of the agreement." The complainant, in his amended bill, sets forth distinctly, that this agreement was made with and by the said Daniels, then acting as agent and attorney of J. D. Brown in the premises. Fenner Mowry, to whom the mortgage is transferred, and who is now an additional respondent to this bill, in answering, admits the existence of an agreement with D. Daniels, requires the production of the original, recites it so far as to identify it with the memorandum produced, denies the performance of it, and then concludes, " that the complainant is forever barred and

foreclosed of all equity and right of redemption in said mortgaged premises." The answer thus impliedly implicates the complainant with the agreement, and in no way denies the distinct allegation of the bill, that D. Daniels was the authorized agent and attorney of J. M. Brown, for the purpose of concluding it.

Such being the proceedings of the parties and such the allegations of the bill and answer, I can do no otherwise than conclude it to be an admitted fact, that D. Daniels was the agent and attorney, legally authorized to make the aforesaid agreement for J. M. Brown, and that it is as binding on the said Brown and all claiming under him, as if it had been made by himself. The fact may not be so, but from the papers and proceedings in this case, I am forced to this conclusion.

But if this conclusion be correct, the next question is, what legal effect this agreement had upon the actual possession and the right to redeem.

Our statute concerning the redemption of mortgages, by its second section, expressly provides that all real estate mortgaged shall be redeemable on paying the monies borrowed thereon, with interest, or, performing the condition, deducting the rents and profits, the mortgagee, or any under him, may have recovered over and above repairs and improvements, and authorizes one entitled to the equity of redemption to prefer a bill for that purpose. This section leaves the continuance of the right to prefer a bill and redeem indefinite as to time. The right to redeem arises only after condition broken, and this section, taken independently, prescribes no limits to its continuance ; but the third section limits it to three years next after mortgagee, or other person claiming under him, shall by force of law, or peaceable

and open entry made in the presence of two witnesses, have taken actual possession of such mortgaged estate and continued the same for the term of three years next following such entry.

It is not, however, the mere actual possession of the premises, continued for the space of three years, without regard to other circumstances, that makes the estate absolute in the mortgagee. A right to foreclose, necessarily supposes a precedent right to redeem, with all the incidents necessary to make that right effective, and the actual possession must be accompanied throughout the three years with a right in the mortgagor, or those claiming under him, to prefer his bill and redeem the mortgaged premises. To establish this point, let it be supposed that a surrender of possession be made, pursuant to the statute, immediately on the execution of the mortgage, and, that it be continued for the three years. Here is the literal possession required by the statute, in order to entitle the mortgagee to foreclose ; and, yet, if the three years of possession elapse before condition broken, no one can suppose that it would make the estate absolute in the mortgagee ; or, to make the truth of the position still more manifest, suppose the condition broken within one year after the commencement of such a possession, its three years continuance certainly would not bar the right of redemption. And why not ? Simply, because the right to redeem has not accompanied the actual possession throughout the three years required by the statute. The statute intends that mortgaged estates shall be redeemable for at least three years, after condition broken and possession surrendered, before possession shall operate a foreclosure. Upon this construction only, can effect be given to the second and

third sections of this act ; the second, conferring on the mortgagor a right to redeem, of indefinite continuance, and the third, limiting it to the 'three years of actual possession ; the operation of both together being to secure to the mortgagor a redeemable interest in the realty for no fractional part, but for the whole of three years of possession, required by the statute to render the estate absolute in the mortgagee.

Now, if this conclusion be correct, the next question is, what effect has the above recited agreement had upon the rights and relations of the mortgagor and mortgagee and those claiming under them. Have the parties by the stipulations of that agreement changed the character of the possession under the surrender ? Or have they in any way abridged the term of redemption or suspended the right to prefer a bill to redeem ? If they have done either, then there has not been that actual possession and continued right to redeem and prefer a bill—its necessary incident—which the statute requires in order to operate a foreclosure.

To determine this question, let us now particularly consider the terms of the contract in its several stipulations and the legal effect thereof.

The consideration of this contract as expressed in the memorandum is, " that no bill in equity is filed to redeem said estate." This must be understood to apply to the whole three years of the statute ; or rather, since no bill had been filed, to the remaining eight days, during which, a bill might have been filed. This was the only right which could have been relinquished and all that could have passed under the name of a consideration. No other intelligible application can be made of the words. They cannot be extended to the year to

come ; for that would be to designate a condition growing out of a grant and limited to it, as a consideration for the grant itself. Besides, D. Daniels has stipulated that no bill shall be filed during that year ; but makes no express reference to the eight days during which a bill might have been filed pursuant to the statute. The words, therefore, must be restricted to these eight days, and for and during that time, by the terms of the contract, no bill was to be filed.

If this is to be regarded as a relinquishment of right on the part of J. M. Brown, made by D. Daniels as his agent or attorney, then had he filed his bill within eight days it must have been dismissed, on the ground that he had stipulated to forbear the use of his remedy for that time. For though one having a right to file a bill to redeem, cannot absolutely part with that right by an agreement not under seal ; yet may he, as in other cases, where he has a right of action, stipulate, without seal, not to exercise it for a given time, as eight days or even a year, especially, when the legal effect of such a stipulation is to be an enlargement and continuance of the equity of redemption.

Nor, can it make any difference as to the result, whether this extinguishment be regarded in itself as a consideration of the contract or a condition thereof.— If it be regarded as a mere condition, which Brown or one claiming under him, might or might not observe, but incur the forfeiture if he chose, then, if he did observe it, the same consequences must follow and it must have the same legal effect, as if the right to file the bill had, for that space of time, been relinquished, under stipulations which might have been enforced in equity. If it be a consideration of the contract, then it was re-

ceived at the time of the agreement in that relinquishment of the right, which the language of the contract necessarily implies. So, that be it a condition, it has been performed—be it a consideration, it has been received. Be it the one or the other, the legal effect is the same—during the eight days of the three years, the exercise of the right to redeem, was suspended by force or in consequence of the mutual agreement of the parties in interest.

But, if this be so, then there has not been that continued right to prefer a bill and redeem, during the whole three years of actual possession, which the statute requires. In other words, the actual possession has not been continued for the term of three years under the surrender, pursuant to the statute ; but for part of that time, under the surrender pursuant to said agreement.

And, in fact, this is no result other than that which the parties themselves contemplated. The right of redemption was not to be foreclosed at the end of three years, if during the eight days no bill was filed. But the legal effect does in one respect differ from the intent of the parties. It is the legal effect of the arrangement to carry the right to redeem not only over the three years, but over the three years indefinitely, and that ; as will presently appear, although it was the express intent of the parties to limit its extension to the 7th of May, 1839, or to a space of little more than one year.

It must be conceded that in terms, the agreement does continue the right in equity to redeem from May 7th, 1838, for the space of one year ; but it also includes the correlative stipulation on the part of Daniels, that during said year no bill shall be filed to redeem said mortgage and that at the end thereof, to wit, May 7, 1839,

the mortgage should be paid in the manner prescribed, or, in default thereof, said right in equity be foreclosed. So that here, again, the continued possession is not accompanied with a continued right to redeem and its necessary incident ; and the unavoidable legal effect of this stipulation is to carry the right of redemption, notwithstanding the intent of the parties, over the time limited by them and to make the limitation in law void.

Or, if it be not void, then the necessary consequence is, that the stipulation not to file the bill is void. For if there was no right to redeem beyond the year, and if during the year no bill could be filed, the stipulation not to file a bill was no agreement, merely to forbear the enforcement of a right, like the forbearance for the eight days, but an unconditional abdication of it to the mortgagee ; and I need not add, that this could be done only by an instrument under seal.

Again, the intent of the parties in this particular, is in itself contradictory and self-destructive. It is their intent that during the additional year, no bill should at any time be filed, and yet to continue the right to redeem for that time and for that time only. Such an intent cannot be carried into effect. For as long as there is a right to redeem, there is a right to file a bill for that purpose, and though a party may stipulate to forbear the exercise of his remedy so that the right to redeem continue unimpaired, yet, when the manifest intent of such a stipulation is to annul all right to redeem by any legal process, it would be impossible, as it would be inconsistent with any rule of law and equity, to give that intent effect.

This stipulation of the parties, therefore, as to the right to file a bill during the additional year, or, as to the fore-

closure at the end thereof, must, if not absolutely void, be in all respects voidable.

I do not mean to be understood to say, that parties may not, by a mutual agreement, postpone the day of foreclosure ; but then it must be done in legal form and consistently with the power and right of the mortgagor to redeem. If, by such an agreement, that power or right be interrupted, the mortgagee will be put to a new entry in order to foreclose, or he must foreclose pursuant to the provision of the fifth section.

But though the contract, as to the stipulation last mentioned, be void or voidable, it does by no means follow, that the entire contract may be avoided. I am forced on the conclusion that the plaintiff has a right to redeem under this bill, but then equity requires him to perform the contract in as far as it can be enforced.— The original complainant would have appeared in Court with more equity, had he made a tender of the amount due conformably to the contract, and to this end he should have taken the day of filing the bill for the day of payment.

There is no part of the sum that was stipulated to be paid which he ought not then to have paid or tendered. It is the intent of parties that taints a contract with usury, and not the mere words in which that contract is expressed ; and when, in this contract, Daniels agrees to pay compound interest, he does but stipulate to pay the excess of compound over simple interest, as a part of the consideration, for which the time to redeem was extended. This tender was not made. The plaintiff not having done full equity, must be required to do it before he can redeem. I am, therefore, of opinion, that said party should be permitted to redeem only on con-

that the principal sum and legal interest due on the mortgage be paid, together with a sum equal to the excess of compound over simple interest calculated up to the term, and equal to all expenses intended by said contract to the defendants, taxable costs in this suit and to the reasonable fees of defendant's necessary counsel on record during its pendency.